# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JOSEPH G. ESSEX,**

       **Plaintiff,**

v.

**PERMOBIL, INC.,**

       **Defendant.**

Case No. 24-cv-01941-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is Defendant Permobil Inc.'s ("Permobil's") Motion for Summary Judgment (Doc. 19) and Plaintiff Joseph Essex's Motion to Continue Permobil's Motion for Summary Judgment (Doc. 28). For the reasons stated below, the Court **GRANTS in part and DENIES in part** each motion. Moreover, the Court **DENIES** Plaintiff's Motion for Sanctions (Doc. 24).

### BACKGROUND

Essex originally brought this action in the Circuit Court of St. Clair County, Illinois against two defendants, Permobil and Peggy Spilker. (Doc. 1, Ex. A). In his original Complaint, Essex alleges that his employer Permobil failed to grant him leave under the Family and Medical Leave Act ("FMLA") including leave and reporting associated with "personal injuries," and that they defamed him and terminated him as a result of his disability. (*Id.*). Essex alleges that Spilker's negligence resulted in an automobile accident which led to the personal injuries that serve as the impetus for his cause of action against Permobil. (*Id.*). Permobil removed this action to federal

court, asserting that this Court has federal question jurisdiction, or, in the alternative, diversity jurisdiction. (*Id.*). Essex filed a Motion to Remand. (Doc. 7). Because the causes of action were entirely unrelated, this Court determined that the Defendants were improperly joined and, therefore, severed the case, creating complete diversity and rendering the motion to remand moot. (Doc. 13). Essex filed his Amended Complaint on January 2, 2025. (Doc. 14). Rather than filing an answer or motion to dismiss, Permobil filed a Motion for Summary Judgment. (Doc. 19). Essex filed a Motion to Strike the Motion for Summary Judgment on March 27, 2025. (Doc. 22). Permobil filed a Reply on April 10, 2025. (Doc. 23). The Court determined that Essex's Rule 56(d) affidavit lacked the requisite specificity, and, therefore, denied his motion. (*See* Doc. 27). However, as a courtesy, the Court gave Essex an opportunity to file an amended motion. (*See id.*). Essex filed his Amended Motion on June 16, 2025. (Doc. 28). Permobil filed a Response on June 30, 2025 (Doc. 29), to which Essex filed a Reply on July 25, 2025 (Doc. 33). The Court heard oral arguments on the motion on August 20, 2025. (Doc. 34).

## LEGAL STANDARDS

The Court notes that as to Counts I and III, Permobil exclusively argues that Essex fails to state a cause of action. Furthermore, at oral argument, counsel for Permobil stated that the Court may treat its motion as a Motion to Dismiss, rather than as a Motion for Summary Judgment. Accordingly, as to Counts I and II, the Court will use the legal standard for a Motion to Dismiss. As to Counts II and IV, however, where Permobil relies on the record to argue that no dispute of material fact exists, the Court will use the standard for a Motion for Summary Judgment, and

evaluate Essex's Motion to Continue pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

## I.     Federal Rule of Civil Procedure 12(b)(6)

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Because the instant suit was filed in Illinois and both parties have applied

Illinois law, the Court applies the same. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611–12 (7th Cir. 2012).

## II.     Federal Rule of Civil Procecure 56(d)

Under the Federal Rules of Civil Procedure, a party "may move for summary judgment at any time." *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986). "The fact that discovery is not complete—indeed, has not begun—need not defeat the [summary judgment] motion." *Id*. Where a party requires additional discovery to oppose a motion for summary judgment, federal law sets forth specific procedures for obtaining such discovery. Under federal law, "[w]hen a party thinks it needs additional discovery in order to oppose a motion for summary judgment . . . Rule 56(f) [now Rule 56(d)] of the Federal Rules of Civil Procedure provides a simple procedure for requesting relief: move for a continuance and submit an affidavit explaining why the additional discovery is necessary." *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006).

A party seeking Rule 56(d)'s protection must make a good faith showing that it cannot respond to the movant's affidavit. *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000). This requires an affidavit from the nonmovant specifically identifying the material facts that it anticipates discovering. *See Grundstat v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999) (finding vague assertions that discovery would develop genuine issues of material fact insufficient to grant continuance). Rule 56(d) "requires a party opposing summary judgment to do more than request a 'fishing expedition' in the hope of finding evidence sufficient to establish the existence of a genuine issue of material fact." *Cima v. WellPoint Health*

*Networks, Inc.*, 556 F. Supp. 2d 901, 905 (S.D. Ill. 2008) (citing *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005)). Specifically, requests for additional discovery must be specific, cannot be based upon speculation, and must demonstrate how discovery would be likely to reveal genuine disputes of material fact. *Trzeciak v. State Farm Fire & Cas. Co.*, 809 F. Supp. 2d 900, 905 (N.D. Ind. 2011) (citing *Davis*, 396 F.3d at 885; *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000)).

### III. Rule 11 Sanctions

Federal Rule of Civil Procedure 11(b) provides that any attorney filing "a pleading, written motion, or other paper . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Additionally, "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id*. R. 11(c)(1). Sanctions can be monetary or "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the

reasonable attorney's fees and other expenses directly resulting from the violation." *Id*. R. 11(c)(4).

The Seventh Circuit has stated that "Rule 11 imposes a duty on attorneys to ensure that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 392 (1990)). Additionally, "for Rule 11 purposes a frivolous argument is simply one that is 'baseless or made without a reasonable and competent inquiry.'" *Berwick Grain Co. v. Illinois Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000) (quoting *Indep. Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.*, 202 F.3d 965, 969 (7th Cir. 2000)). Moreover, "[t]he very point of Rule 11 is to lend incentive for litigants 'to stop, think and investigate more carefully before serving and filing papers.'" *Id*. at 505 (quoting Cooter & Gell, 496 U.S. at 398). While "[s]anctions will be imposed if counsel files a complaint with improper motives or without adequate investigation[,] . . . [e]ven 'objectively frivolous filings support but do not compel an inference of unreasonable investigation.'" *Brunt*, 284 F.3d at 721 (citing *Mars Steel Corp. v. Cont'l Bank*, 880 F.2d 928, 932–33 (7th Cir. 1989)).

## ANALYSIS

### I. Breach of Contract

Count I alleges a cause of action for breach of contract, specifically the covenant of good faith and fair dealing. (Doc. 1, Ex. B, p. 5). Essex attached a copy of his offer letter to the Complaint. (*See id*., p. 13). Federal Rule of Civil Procedure 10(c) provides that "written instruments" attached to a pleading become part of that pleading for all

purposes. Thus, when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and his complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint. *See Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998).

Essex's offer letter states that he is an at-will employee. (*See* Doc. 1, Ex. B, p. 13). "In Illinois, at-will employees have no enforceable contract rights against their employers." *Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2003 WL 22176077, *8 (N.D. Ill. Sept. 18, 2003). An employment at-will relationship "gives the employer the right to terminate the employment at any time. Therefore, it is incongruous to imply a covenant [the implied covenant of good faith and fair dealing] which restricts that right." *LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 565 (7th Cir. 1991) (quoting *Harrison v. Sears, Roebuck & Co.*, 546 N.E.2d 248, 256 (Ill. App. Ct. 1989)). Moreover, regardless of whether an employee is at-will, "Illinois courts . . . have consistently recognized that no cause of action exists for an alleged breach of a covenant of good faith and fair dealing between an employer and employee." *Ring v. R.J. Reynolds Indus. Inc.*, 597 F. Supp. 1277, 1281 (N.D. Ill. 1984), *aff'd, appeal dismissed sub nom. Ring v. R.J. Reynolds Indus., Inc.*, 804 F.2d 143 (7th Cir. 1986). Consequently, under Illinois law, Essex's claim for breach of contract fails and must be dismissed

## II.     Negligence/Willful & Wanton Conduct

In Count III, Essex alleges theories of negligence and willful and wanton

conduct against Permobil for the Company's failure to investigate and supply information to the Illinois Department of Employment Services ("IDES") related to the reasons for his termination, and to "otherwise act as a reasonable person." (Doc. 1, Ex. B, p. 7). Illinois courts do not recognize a cause of action for negligent investigation in at-will employment relationships. *See Jones v. Britt Airways, Inc.*, 622 F. Supp. 389, 394 (N.D. Ill. 1985); *see also Spann v. Springfield Clinic*, 577 N.E.2d 488, 489 (Ill. 1991) (rejecting claim that at-will employee was entitled to redress where she was discharged based on mistaken conclusions of a faulty investigation). In fact, there are no Illinois cases suggesting that there is a cause of action for "negligent investigation" even when there is a non-at-will employment relationship. *Miller v. Ford Motor Co.*, 152 F. Supp. 2d 1046, 1050 (N.D. Ill. 2001). Accordingly, this claim also fails under Illinois law and must be dismissed.

### III.  Defamation

In Count II, Essex alleges that Permobil defamed him by falsely and maliciously publishing to at least one third party that Essex was terminated due to his attempt to sabotage Permobil by leaving one of its ovens in an explosive state. (Doc. 1, Ex. B, p. 6). "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.* Under Illinois law, the elements of a defamation

claim are the same whether the plaintiff alleges defamation *per se* or *per quod*. See *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1102 (N.D. Ill. 2016).

820 ILL. COMP. STAT. 405/1900.1 states that:

All letters, reports, or communications of any kind, either oral or written, from an employer or his workers to each other, or to the Director or any of his agents, representatives, or employees, made in connection with the administration of this Act shall be absolutely privileged and shall not be the basis of any slander or libel suit in any court of this State unless they are false in fact and malicious in intent.

Even if a qualified privilege exists, the communication can still be defamatory and actionable if the privilege has been abused. "In general terms, overcoming the qualified privilege requires a showing that the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." *Smock v. Nolan*, 361 F.3d 367, 372 (7th Cir. 2004) (citing *Kuwik v. Starmark Star Mktg. and Admin., Inc.*, 619 N.E.2d 129, 133 (1993)). To prove such abuse, a plaintiff must show "a direct intention to injure another, or a reckless disregard of [the defamed party's] rights and of the consequences that may result to him." *Kuwik*, 619 N.E.2d at 135. Importantly, a defendant acts with reckless disregard when it makes a statement "despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." *Id*. at 133 (citation omitted). Reckless disregard of a plaintiff's rights can also include the failure to properly investigate the truth of the matter. *Id*. at 136. Although whether a qualified privilege exists is a question of law for the court, the issue of whether the privilege was abused is a question of fact for the jury. *Id*. at 133.

In its Motion for Summary Judgment, Permobil asserts that:

> There is nothing whatsoever in the documents provided by Permobil to IDES from which any reasonable jury could infer that Permobil's reasons for Plaintiff's termination included that he "attempted to maliciously sabotage the company by intentionally leaving ovens in an explosive state" or that Permobil believed Plaintiff had committed a crime.

(Doc. 20, pp. 11–12) (citing Doc. 1, Ex. B, p. 6). In his Rule 56(d) Affidavit, Essex states that the interrogatories he seeks from Permobil will require Permobil to state "each reason why Plaintiff's employment at issue was terminated," identify each person (with contact information) "who participated in the decision and/or investigation to terminate Plaintiff's employment," and reveal what it has told others who have inquired about Essex for job references. (Doc. 28, Ex. A, pp. 1–2). Essex also seeks records seeking Permobil's knowledge of his medical condition. (*Id.*, p. 2). He also asserts that he requires the deposition of Permobil's affiant, Katie Raatz, to establish "the lack of her personal knowledge and the lack of validity of many terms in her affidavit." (*Id.*, p. 3). Permobil argues that while Essex believes this discovery is relevant to the merits of his claim, "[Essex] does not explain how any of the information is relevant to his response to Defendant's Motion for Summary Judgment, which is premised on Plaintiff's failure to exhaust administrative remedies, the statute of limitations, and the fact that several of his claims are not legally cognizable under Illinois law." (Doc. 29, p. 7).

The Court finds Permobil's argument unpersuasive. First, Permobil's argument is incorrect as to the defamation claim. Its argument for summary judgment as to the defamation claim is entirely premised on the facts Permobil presents, not on purely legal arguments. Therefore, its argument that "Plaintiff also confuses the concepts of discovery that he needs to respond to the motion for summary judgment as opposed

to discovery he believes he needs to prevail on the merits of his claims" is unpersuasive, as it is a distinction without a difference as to the defamation count.

Second, the Court is satisfied that Essex has met his burden under Rule 56(d). As a general matter, "[s]ummary judgment should not be entered 'until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion.'" *Chalimoniuk v. Interstate Brands Corp.*, 172 F.Supp.2d 1055, 1057–58 (S.D. Ind. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). That is, "when issues material to the outcome of the matter are in question, the full benefit of discovery is preferable." *Chalimoniuk*, 172 F. Supp. 2d at 1059. Here, Essex seeks facts material to the truth of Permobil's publications, and/or whether they abused their privilege, and has stated the discovery he seeks necessary to discover these facts. This is sufficient under Rule 56(d). *See Snyder v. Livingston*, 2012 WL 32984, at *2 (N.D. Ind. Jan. 5, 2012) (finding that Rule 56(d) is was satisfied where plaintiff expected to obtain evidence of "communications" by defendants that indicate, among other things, that defendants (1) viewed her as disabled from a medical or psychological condition that caused her to be "mentally unstable," and (2) repeated false, damaging statements about her mental status and her ability to do her job). Accordingly, Essex's defamation claim survives Permobils's Motion for Summary Judgment.

## IV.  Discrimination

Count IV alleges that Defendant discriminated against Plaintiff based on his "medical disability" in violation of the Illinois Human Rights Act. (Doc. 1, Ex. B, pp. 8–10). After evaluating both parties' arguments, the Court determined that the key

issue to be resolved at this stage is whether Essex timely filed his discrimination claim with the Illinois Department of Human Rights ("IDHR"). Accordingly, this Court ordered the parties to provide supplemental briefing on that issue specifically. (*See* Doc. 35). Plaintiff argues that, because he was as a *pro se* filer at the relevant time, he satisfied the "charge" requirement by timely filing a Complainant Information Sheet ("CIS") with the IDHR. (*See* Doc. 36). Defendant argues that Plaintiff filed this action *before* receiving the final report from the IDHR, thus failing to exhaust administrative remedies, and that his charge was not timely perfected. (*See* Doc. 37).

As a general matter, intake forms and questionnaires are insufficient to satisfy the 300-day charge-filing requirement. *See Novitsky v. American Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) ("Under the statute, however, it is the charge rather than the questionnaire that matters. Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation." (citing 42 U.S.C. § 2000e–5(b); *Perkins v. Silverstein*, 939 F.2d 463, 470 (7th Cir. 1991))); *see also Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992) ("To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire."). However, the Supreme Court softened this requirement in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), holding that an intake form may be construed as a "charge" where the intake form contains sufficient detail and can reasonably be construed as a request by the employee for agency action. *Id*. at 405. "Without such a request the CIS is just a pre-charge screening form, which does not prompt IDHR to notify the employer, launch an

investigation, or sponsor mediation between the parties—filing a charge form does." *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016). The regulation that informed the *Holowecki* decision requires a "charge" to include a "clear concise statement of the facts . . . constituting the alleged unlawful employment practices." 29 C.F.R. § 1626.8(a)(3).

First, the CIS attached to Essex's July 2, 2024 intake questionnaire provides the relevant events and dates associated with the alleged discriminatory conduct by Defendant. (*See* Doc. 36, Ex. D). In addition to providing the name and address of his employer, Essex filled out the sections requiring him to briefly state the date(s) of the alleged discriminatory conduct as well as a brief summary of the events. (*Id.*). This satisfies the requirements set forth by the regulations and *Holowecki*. Moreover, the record shows that the IDHR determined that the July 2, 2024 CIS did satisfy the "charge requirements." (Doc. 36, Ex. A p. 30). In fact, on March 27, 2025, the IDHR emailed Defendant's counsel to expressly inform Defendant that the IDHR: "case records show that complainant filed the above identified charge on July 2, 2024. The filing substantially complied with the requirements of a charge, and IDHR docketed the filing under control No. #25M070221." (*Id.*). Both cases cited by Defendant in arguing that this was not a formal charge, *Carlson*, 840 F.3d at 468, and *Amen Ra v. BNSF Ry. Co.*, 795 F. App'x 463, 465 (7th Cir. 2020), rely, in part, on the fact that the CIS told Plaintiff that "THIS IS NOT A CHARGE" to conclude that the plaintiff in each case did not meet the charge requirement. In this case, however, despite that language appearing on Plaintiff's CIS, the IDHR clearly believed that Plaintiff's CIS met the requirements of a charge, nonetheless. Therefore, the cases on which

Page 13 of 18

Defendant relies are unpersuasive. Moreover, in both *Carlson* and *Amen Ra*, the Seventh Circuit relied on the fact that the respective plaintiffs failed to request remedial action. The Court in *Holowecki* concluded that the plaintiff had requested remedial action when she "gave consent for the agency to disclose the affidavit in a 'formal proceeding'" and "checked a box on the Intake Questionnaire giving consent for the agency to disclose her identity to the employer." *Id*. at 406 (internal citations omitted). Here, Plaintiff checked the box permitting the same. (Doc. 36. Ex. D). Therefore, this Court holds that Plaintiff filed a timely charge based on the rationale in *Holowecki* and the IDHR's independent assessment.

Generally, the complainant first must file a charge with the IDHR within 300 days of the alleged civil rights violation. *See* 775 ILL. COMP. STAT. 5/7A–102(A). Ten days after the filing of a charge, the IDHR notifies the complainant of his right, which must be exercised within 60 days of receiving the notice to "opt out" of its investigation of the charge and directly commence a civil action in court. *Id*. § 5/7A–102(B). ("The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent and provide all parties with a notice of the complainant's right to opt out of the investigation within 60 days . . . ."); *id*. § 5/7A–102(C-1) ("At any time within 60 days after receipt of notice of the right to opt out, a complainant may submit a written request seeking notice from the Director indicating that the complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction."). If the complainant does not timely opt out of IDHR's investigation, he may file a civil suit once the IDHR investigates the charge and issues a report, *see id*.

§ 5/7A–102(D), or in the event that IDHR fails to issue a report within a year of the charge being filed, *see id.* § 5/7A–102(G)(2). Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. *See Garcia v. Village of Mount Prospect*, 360 F.3d 630, 640 (7th Cir. 2004).

Here, there is no dispute that Plaintiff commenced his civil action before he received the final report of the IDHR and before 365 days had elapsed after he filed his charge; moreover, Essex also failed to submit a written request to opt out. Typically, the Court would determine that because Plaintiff filed a civil action just eight days after he submitted a CIS to the IDHR, he did not exhaust his administrative remedies as required to commence a civil action for discrimination under the IHRA. However, this is a unique set of circumstances requiring the use of judicial estoppel. A review of the record demonstrates that the IDHR dismissed Plaintiff's charge precisely *because* of the filing of this suit. (*See* Doc. 33, Ex. A). Defendant does not challenge Plaintiff's contention that it notified the IDHR of the commencement of this suit. ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims."). *Cora v. Tootsie Roll Indus., LLC*, 2024 WL 1363537, at *10 (N.D. Ill. 2024) (citing *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989)). However, as Plaintiff's access to administrative remedies was impeded by Defendant, the purpose of the exhaustion requirement would be frustrated without the use of judicial estoppel.

"Judicial estoppel generally prevents a party from prevailing in one phase of a

case on an argument and then relying on a contradictory argument to prevail in another phase." *Walton v. Bayer Corp.*, 643 F.3d 994, 1002–03 (7th Cir. 2011). Courts typically examine three factors in determining whether judicial estoppel applies: (1) whether the party's later position was "clearly inconsistent" with its earlier position; (2) whether the party against whom estoppel is asserted in a later proceeding has succeeded in persuading the court in the earlier proceeding; and (3) whether the party "seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010). Because the purpose of judicial estoppel is to protect the integrity of the judicial process, courts have discretion in deciding whether to invoke the doctrine. *See New Hampshire v. Maine*, 532 U.S. 750, 751 (2001). All three elements are met here. First, Defendant has asserted that Plaintiff cannot proceed with his claim because he has not exhausted an IDHR claim (Doc. 29 pp. 2–3; Doc. 19, p. 2). However, Defendant has not challenged Plaintiff's contention that it represented to the IDHR that this case was filed; that implies that the underlying representation was that Plaintiff was seeking a remedy in this case rather than seeking a remedy through the IDHR. Now, Defendant represents that Plaintiff is to seek a remedy through the IDHR, an inconsistent position. Second, the IDHR relied on Defendant's contention that Plaintiff was seeking redress in this Court when dismissing his claim. Third, Defendant's earlier position allowed it to dismiss Plaintiff's IDHR claim. Now, it seeks to deprive Plaintiff of the right to proceed in any either forum. The Court determines that Defendant should be estopped from arguing that Plaintiff failed to exhaust administrative remedies. Therefore, Defendant's

arguments as to why this claim should be dismissed at this stage fail. The Court will permit Count IV to proceed into discovery.

## V. Sanctions

Rule 11 is clear that an attorney filing a pleading must ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3). Once again, "a frivolous argument is simply one that is 'baseless or made without a reasonable and competent inquiry.'" *Berwick Grain Co.*, 217 F.3d at 504 (quoting *Indep. Lift Truck Builders Union*, 202 F.3d at 969).

After evaluating each party's briefs and oral arguments, the Court declines to impose Rule 11 sanctions. The Court determines that neither party's arguments rise to the high standard set forth by Rule 11 and Seventh Circuit caselaw. Specifically, the Court notes that this case is still at an early stage, before much of the factual detail necessary for summary judgment or trial has yet to be discovered. Accordingly, sanctions will not be imposed on either party.

### CONCLUSION

For the reasons discussed above, Defendant Permobil, Inc.'s Motion for Summary Judgment (Doc. 19) is **GRANTED in part and DENIED in part**. Permobil's Motion is **GRANTED** with respect to Counts I and III, which are **DISMISSED with prejudice**. Permobil's Motion is **DENIED without prejudice** with respect to Counts II and IV, which shall proceed into discovery. Accordingly, Plaintiff Joseph Essex's Motion to Continue Motion for Summary Judgment (Doc. 28) is **GRANTED in part and DENIED in part**. Essex's Motion is **GRANTED** with

respect to Counts II and IV but **DENIED** with respect to Counts I and III. Essex is entitled to discovery on Counts II and IV, but not Counts I and III. After evaluating each party's briefs and oral arguments, the Court declines to impose Rule 11 sanctions. Accordingly, Essex's Motion for Sanctions (Doc. 24) is **DENIED**. Finally, the Court will set a Rule 16 Scheduling Conference by separate order.

**IT IS SO ORDERED.**

**DATED:  September 26, 2025**

>  s/ *Stephen P. McGlynn*
>  **STEPHEN P. McGLYNN**
>  **U.S. District Judge**